IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES FLETCHER                          :        CIVIL ACTION
                                        :
    v.                                  :
                                        :
PRUDENTIAL INSURANCE                    :        NO. 06-2679
COMPANY OF AMERICA, et al.              :

O'NEILL, J.                                      AUGUST 9, 2007

MEMORANDUM

Plaintiff James Fletcher filed a complaint under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., claiming that defendants Prudential Insurance Co. of America and GetronicsWang Co. wrongfully terminated his disability benefits. Before me now are defendants' motion for summary judgment, plaintiff's response, and plaintiff's statement of disputed facts.

BACKGROUND

Fletcher was employed by GetronicsWang as a field service technician. On March 8, 1999, he injured his lower back while lifting a heavy box. By June 1999 he was back to work full time. On August 2, 1999, Fletcher suffered another work-related injury when he was involved in a motor vehicle accident in the course of employment. He was out of work for two weeks and then went to light duty work for two weeks. On or about October 1999, his doctor restricted him to no driving distances exceeding forty miles and no lifting above twenty pounds. Three months later, on January 7, 2000, Fletcher's chiropractor determined that he was totally disabled.

1

Prudential administers and funds a disability policy for GetronicsWang. The policy requires that to be determined disabled a claimant must be unable to perform the material and substantial duties of his regular occupation due to sickness or injury. After twenty-four months of payments, an individual is disabled "when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or expertise."

Prudential granted Fletcher's claim for long term disability ("LTD") benefits on November 27, 2000 based on his neurologist's records which indicated that Fletcher was receiving injection treatments and was given a prescription for oxycontin which would prevent him from driving, an essential duty of his job. On November 21, 2001, Prudential determined that Fletcher was totally disabled from his own occupation and extended LTD benefits for twenty-four months of own occupation disability, until September 8, 2002.

On March 12, 2002, Prudential requested that Fletcher provide a statement of his continued eligibility of benefits. Fletcher responded that he still had neck, shoulder and back problems and that his pain and symptoms had increased. Fletcher's neurologist, Dr. Bruce Grossinger, D.O., opined that Fletcher's prognosis was guarded and that he was unfit for duty based on a diagnosis of severe left brachial plexus injury, right trochanteric bursitis, right sacroiliac dysfunction, and lumbar strain.

On October 4, 2002, after a review of Fletcher's medical file, Prudential continued LTD benefits, finding that plaintiff was disabled from any gainful occupation. At that time, the clinical reviewer noted that Fletcher was likely able to perform sedentary work with the ability to change positions and a vocational rehabilitation was planned to determine if there were any

positions available with his limitations.

Prudential continued to monitor Fletcher's condition using Dr. Grossinger's reports. In October 2003, Prudential determined that Fletcher was undergoing physical therapy for a brachial plexus injury and planned to follow up after physical therapy was complete to see if there was an improvement in symptoms and limitations. On January 13, 2004, Prudential was informed that Fletcher was having pain medication injections and extended his benefits again.

In March 2004, upon Prudential's request for further medical documentation, Dr. Grossinger sent Prudential documentation of a lumbar facet injection administered to Fletcher. Dr. Grossinger did not outline plaintiff's restrictions and limitations in that report. Then, according to Prudential but disputed by Fletcher, Prudential spoke with an individual at Dr. Grossinger's office and was told that Fletcher's restrictions and limitations as noted in his chart were no prolonged sitting, standing or lifting, and could lift no more than ten pounds. Using this information, Prudential terminated plaintiff's claim as he was determined to have the vocational and physical ability to perform the duties of other occupations: surveillance systems monitor, dispatcher, cashier cafeteria or Assembler.

On May 5, 2004, Fletcher appealed Prudential's decision to terminate his LTD benefits. He enclosed a letter from Dr. Grossinger which denied that he or anyone else from his office gave Prudential the information about Fletcher's restrictions and limitations. Dr. Grossinger stated that Fletcher continued to be disabled and could not perform the duties of the occupations identified by Prudential.

Fletcher then filed a complaint against Prudential with Pennsylvania's Insurance Department. Based on the newer information from Dr. Grossinger's office, Prudential restated

3

Fletcher's benefits. Prudential also advised that it would continue to follow up with Fletcher and his doctor to evaluate his continued eligibility for benefits.

On July 8, 2004, Prudential sent Fletcher to Dr. Steven Mandel, M.D., a neurologist, for a independent medical examination (IME). Dr. Mandel found no objective findings but noted that Fletcher had subjective complaints. Dr. Mandel opined that Fletcher was able to perform a light sedentary type of employment full time with restrictions to include sitting four hours at a time, eight hours during a day; standing two hours at one time, four hours during the course of a day; walking two hours at a time, four hours during the course of a day; and lifting up to ten pounds frequently, 11-20 pounds occasionally. Plaintiff could also use his hands for simple grasping, pushing, pulling, and fine manipulation and could occasionally bend, squat, and crawl.

Fletcher described some problems with Dr. Mandel's IME in a letter to Prudential. Fletcher noted that, contrary to Dr. Mandel's report, Joan, Dr. Mandel's assistant, was not present throughout Fletcher's entire examination. Dr. Mandel was not familiar with the drug prescribed by Dr. Grossinger. Further, because Fletcher had to wait over an hour and a half before his appointment, he had to take breakthrough medication. This medication was a morphine drug, which has a relaxing effect on the nervous system and which could skew Dr. Mandel's objective findings. Fletcher also claims that his exam lasted two minutes.

On July 27th, 2004, Prudential terminated Fletcher's LTD benefits stating that he no longer met the definition of disability required under the policy because based on the limitations and restrictions found by Dr. Mandel, Fletcher was capable of performing the jobs of bench assembler, usher, painter, or counter attendant.

On August 5, 2004, Fletcher appealed Prudential's decision to terminate his LTD benefits

and enclosed a letter from Dr. Grossinger which stated that Fletcher was unable to perform the duties of his regular occupation as a field service manager. In his letter, Dr. Grossinger also stated that Fletcher had less than a 20% indexed monthly earning capacity.

On August 20, 2004, Prudential upheld its decision to terminate Fletcher's LTD benefits because under the policy plaintiff had to be disabled from any occupation, not just his own occupation. According to Prudential, the record contained no medical findings that would support plaintiff's inability to perform a sedentary to light duty occupation.

On September 8, 2004, Fletcher submitted his second appeal of Prudential's decision. He included a letter from Dr. Grossinger which stated that Fletcher could not sit or stand for greater than thirty minutes at a time, would miss over four days per month, and required narcotic analgesics on a regular basis that could jeopardize the health and welfare of others at the workplace. After reviewing Fletcher's medical evidence again, Prudential determined that there was no evidence of a sickness or injury that would prevent the plaintiff from performing the duties of any gainful occupation.

On April 11, 2005, Prudential upheld its decision to terminate Fletcher's claim for LTD benefits effective August 1, 2004. Prudential based this decision on the fact that plaintiff failed to provide any further supporting documentation of his inability to perform any gainful occupation.

STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions . . . which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has filed a properly supported motion, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

I must determine whether any genuine issue of material fact exists. An issue is genuine if the fact finder could reasonably return a verdict in favor of the non-moving party with respect to that issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is material only if the dispute over the facts "might affect the outcome of the suit under the governing law." Id. In making this determination, I must view the facts in the light most favorable to the non-moving party, and the non-moving party is entitled to all reasonable inferences drawn from those facts. Id. However, the nonmoving party may not rest upon the mere allegations or denials of the party's pleading. See Celotex, 477 U.S. at 324. The non-moving party must raise "more than a mere scintilla of evidence in its favor" in order to overcome a summary judgment motion and cannot survive by relying on unsupported assertions, conclusory allegations, mere suspicions. Williams v. Borough of W. Chester, 891 F.2d 458, 460 (3d Cir. 1989). If the evidence for the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50 (citations omitted).

DISCUSSION

I.      ERISA Standard of Review

The subject matter of this case is frequently litigated in this Court and the governing legal principles are well established. Where the administrator of a long term disability plan has discretion to interpret the plan and determine whether benefits are available to an injured employee, the administrator's exercise of discretion is judged by an arbitrary and capricious standard. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989); Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993). "Under the arbitrary and capricious standard, an administrator's decision will only be overturned if it is without reason, unsupported by substantial evidence or erroneous as a matter of law." Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 387 (3d Cir. 2000). Courts are not free to substitute their own judgment for that of an administrator absent such a showing. Id.

However, where an insurance company determines the eligibility for benefits and also pays benefits out of its own funds, courts presume a conflict of interest because the insurance company is presumed to have "an active incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers." Id. at 388.[1] Therefore, where there is this conflict of interest on the part of administrators, courts review the denial of benefits under a "heightened arbitrary and capricious" standard. Pinto, 214 F.3d at 387. The parties do not dispute the application of this standard or

---

[1] When reviewing an administrator's determination, courts may only review the evidence that was before the administrator at the time of its determination. Mitchell v. Eastman Kodak Co., 113 F.3d 433, 440 (3d Cir. 1997). However, courts may examine evidence outside of the administrative record when determining the degree of the conflict of interest. Pinto, 214 F.3d at 395.

7

the inherent conflict of interest because Prudential had sole discretionary authority to determine eligibility for disability benefits and funds the payment of those benefits.

Under this heightened standard, courts apply a sliding scale which takes into consideration the degree of conflict on the part of the administrator: the greater the evidence of conflict, the greater the degree of scrutiny (i.e. the less deferential the standard). Id. at 389. In determining the level of conflict, courts evaluate numerous factors: (1) the sophistication of the parties; (2) the information accessible to the parties; (3) the exact financial arrangement between the insurer and the company; and (4) the status of the administrator, as the company's financial or structural deterioration might negatively impact the presumed desire to maintain employee satisfaction. Id. at 392. Courts also evaluate the presence of procedural anomalies, bias, or unfairness in determining the level of scrutiny applied to an administrator's decision. Id.

Neither party discussed the four factors in its brief. However, after reviewing the record, I find that these factors show that Prudential has a conflict of interest in determining Fletcher's eligibility for disability benefits. See generally Stratton v. E.I. Dupont de Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004). I find a sophistication imbalance. Prudential, as a large insurance carrier, is likely to be more sophisticated with respect to insurance claims and presumably deals with numerous such claims on a regular basis.[2] The record does not reveal that Fletcher had prior ERISA or insurance claims experience. This factor cuts in favor of elevating the standard of review.

---

[2]Defense counsel appears to have significant experience defending Prudential against such claims that it arbitrarily and capriciously denied disability benefits. See Stith v. Prudential Ins. Co. of Am., No. 03-4950, 2005 WL 336301 (D.N.J. February 14, 2005); Vaughan v. Vertex, Inc., No. 04-1742, 2004 WL 3019237 (E.D. Pa. December 29, 2004).

There does not appear to be an imbalance with respect to information accessibility. A review of the record shows a conscientious effort by each party to keep the other apprised of the information it had at its disposal. This second factor does not implicate the standard of review.

Evidence with respect to the third and fourth factors is not apparent in the record; however, I assume that Prudential is in a healthy and robust financial condition. Neither of these two factors serve to elevate the standard or review. Overall, these factors weigh in favor of slightly heightening the standard of review.

Courts applying these factors have been on the low end of the sliding scale when there is no evidence of conflict other than the inherent structural conflict. Lasser v. Reliance Standard Life Ins. Co., 344 F.3d 381, 385 (3d Cir. 2003). At the low end of the sliding scale, "a plan administrator's decision will be overturned only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., 222 F.3d 123, 129 (3d Cir. 2000). Courts have been on the high end when there is evidence of procedural anomalies, bias, or unfairness, even where there is no evidence of an inherent structural conflict. See Pinto, 214 F.3d at 394. Although there is no exact formula for reviewing an administrator's determination at the high end of the scale, where courts have found evidence of procedural

anomalies, bias, or unfairness, they apply significance to an administrator's determination.[3]  See id.  For example, courts have applied a higher standard of review where the administrator: (a) relies on the opinions of non-treating physicians over those of treating physicians without explanation, Kosiba v. Merck & Co., 384 F.3d 58, 67-68 (3d Cir. 2004); (b) fails to follow the plan's notification provisions and conducts self-serving paper reviews of medical files, Lemaire v. Hartford Life & Accident Ins. Co., 69 Fed. Appx. 88 (3d Cir. 2003); (c) bases its negative decision on inadequate information and incomplete investigations, Friess v. Reliance Standard Life Ins. Co., 122 F. Supp. 2d 566, 574-75 (E.D. Pa. 2000); (d) reverses an earlier decision allowing benefits without any new evidence that supports the reversal, Pinto, 214 F.3d at 394; (e) selectively relies on favorable parts of medical reports while ignoring unfavorable parts, id.; (f) ignores the recommendations of its own claims managers that benefits should be awarded, Pinto, 214 F.3d at 394.  See also Wright v. Matrix Absence Mgmt., Inc., No. 03-6160, 2005 WL 475173, at *3 (E.D. Pa. Mar. 1, 2005) (discussing cases).

"[A]pplying a heightened arbitrary and capricious review, [I] am deferential, but not absolutely deferential."  Pinto, 214 F.3d at 393.  I will look thus at "the result and the process by

---

[3]The Court of Appeals has acknowledged:

> [T]here is something intellectually unsatisfying, or at least discomforting, in describing our review as a "heightened arbitrary and capricious" standard.  The locution is somewhat awkward.  The routine legal meaning of an "arbitrary and capricious" decision is that used, quite understandably, by the district court: a decision "without reason, unsupported by substantial evidence or erroneous as a matter of law."  Once the conflict becomes a "factor" however, it is not clear how the process required by the typical arbitrary and capricious review changes.  Does there simply need to be more evidence supporting a decision, regardless of whether that evidence was relied upon?

Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 394 (3d Cir. 2000).

which the result was achieved." Id.  Fletcher argues that Prudential's disability process suffered from multiple conflicts of interest.  He argues that Prudential's denial of his long term disability benefits was replete with procedural bias and anomalies because of: (1) Prudential's decision to refer Fletcher for an IME; (2) Prudential's decision to deny benefits after granting them; (3) Prudential's reliance on Dr. Mandel's report over those of Fletcher's treating physicians; and (4) the problems and inconsistencies in Dr. Mandel's report.  Prudential disagrees and argues that there is no evidence of procedural bias or anomalies.

     I note several potential conflicts of interest in Prudential's process.  Prudential's decision to deny benefits after granting them indicates a potential conflict of interest.  Prudential reviewed Fletcher's benefits multiple times and, based on the information available to it, found him disabled.  It regarded one report from Dr. Mandel more highly than over four years of reports and treatment from Fletcher's other doctors, reports that in the past convinced Prudential that Fletcher was completely disabled.  Prudential also supported its decision to uphold its denial of Fletcher's LTD benefits with Dr. Grossinger's letter of August 2, 2004, wherein Dr. Grossinger stated that Fletcher was unable to perform the duties of his regular occupation.  Prudential found that Dr. Grossinger's letter did not comment on Fletcher's functional capacity in general.  In that letter, however, Dr. Grossinger also stated that Fletcher has "less than a 20% indexed monthly earning capacity" and "has ongoing neurological and musculoskeletal injuries, requires narcotic anagesics, and remains disabled."

     The administrative record also shows numerous potential procedural abnormalities in Dr.

Mandel's IME, creating a genuine issue of material fact as to the reliability of his report.[4]  In Fletcher's letter to Prudential on March 8, 2005 he noted that, contrary to Dr. Mandel's report, Dr. Mandel's office assistant Joan was not present throughout Fletcher's entire examination.  Dr. Mandel was not familiar with the drug prescribed by Dr. Grossinger.  Further, because Fletcher had to wait over an hour and a half after his scheduled appointment time before he could see the doctor, he had to take breakthrough medication.  This medication was a morphine drug, which has a relaxing effect on the nervous system and which could skew Mandel's objective findings.  Fletcher also claims that his exam lasted merely two minutes.  If these allegations are true, and at this stage of the litigation I must assume they are, Prudential's decision to deny Fletcher LTD benefits based on Dr. Mandel's report may be arbitrary and capricious.

Because of the disputed issues of fact, I am unable to determine whether Prudential's decision was "the result of self-dealing instead of the result of a trustee carefully exercising its fiduciary duties to grant [Fletcher] the benefits due to [him] under the insurance plan."  Pinto, 214 F.3d at 394.  I therefore cannot grant summary judgment to Prudential.

II.     GetronicsWang

Defendants further argue that GetronicsWang is not a proper party to Fletcher's ERISA action because it is neither the plan administrator nor a fiduciary of the plan.  Fletcher does not dispute this argument in his response.  In ERISA actions, the proper defendant is either the plan itself or a fiduciary of the plan.  See Brown v. Continental Baking Co., 801 F. Supp 238, 240

---

[4] There is also a disputed issue of fact as to why Prudential sent Fletcher to Dr. Mandel for an IME.  Prudential did so after receiving information from Dr. Grossinger's office that supported that Fletcher could work in a sedentary position with no prolonged sitting, standing or lifting, and could lift no more than ten pounds.  Dr. Grossinger denies that this information was given by his office to Prudential.

(E.D. Pa. 1995), citing Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 232-34 (3d Cir. 1994). GetronicsWang was neither. Therefore I will grant summary judgment in favor of GetronicsWang.

    An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES FLETCHER | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PRUDENTIAL INSURANCE COMPANY OF AMERICA, et al. | : | NO. 06-2679 |

ORDER

AND NOW, this 9th day of August 2007, after consideration of defendants' motion for summary judgment, plaintiff's response, and plaintiff's statement of disputed facts, and for the reasons set forth in the accompanying memorandum, it is ORDERED that defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED as to plaintiff's claims against GetronicsWang and judgment is entered in favor of defendant GetronicsWang and against plaintiff James Fletcher. Defendants' motion is DENIED as to all other claims.

s/Thomas N. O'Neill, Jr.
THOMAS N. O'NEILL, JR., J.